IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

AL MCCULLOUGH                                                                                    PLAINTIFF

VS.                                        NO.  4:06CV00390

UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES,
JIM RACZYNSKI, individually and in his official capacity
as Dean of the College of Public Health; HOSEA LONG,
Assistant Vice Chancellor for Human Resources, in his
individual and official capacities                                              DEFENDANTS

<u>ORDER</u>

Pending is Defendants' motion for summary judgment.  (Docket # 28).  Plaintiff has

responded, Defendants have replied and Plaintiff has filed a sur-reply.  For the reasons set forth

herein, the motion is granted.

<u>Facts</u>

Plaintiff, Al McCullough, was formerly employed at the University of Arkansas for Medical

Sciences (UAMS) in the College of Public Health (COPH) as a Computer Project Director.

McCullough's direct supervisor was Dr. Kate Stewart.  Separate Defendant, James Raczynski, was

and is the Dean at the COPH.  Separate Defendant, Hosea Long, is the Assistant Vice Chancellor

of Human Resources at UAMS.

On June 28, 2005, a female employee at COPH, Elaine Wooten, submitted a written

complaint to Separate Defendant Long, stating that McCullough had sexually harassed her.  At the

time of her complaint, Wooten worked as a Project Director at COPH.  On July 7, 2005, a second

complaint of sexual harassment was filed against McCullough by Jodiane Tritt. Tritt worked as a

Registrar at COPH.   Prior to COPH, Tritt worked at the Arkansas Center for Health Improvement

(ACHI) with McCullough. She transferred to COPH in 2002.  McCullough denies all allegations of sexual harassment and claims that "if anything Tritt [and Wooten] engaged in sexual harassment toward him".   In accordance with UAMS Administrative Guide No. 3.1.05, the Office of Human Resources notified McCullough of the allegations and arranged a meeting.

McCullough claims that Dean Raczynski came to him and told him that two women had complaints of sexual harassment against him and that he needed to go to HR. Plaintiff went to HR and met with Hosea Long and Audrey Bradley, who told him there were a couple of complaints. Plaintiff argues that they would not tell him who made the complaints or what they were about; they did not know if the complaints were formal or informal, and would not let McCullough see any documentation. Plaintiff contends that he was not given a procedure or policy at that time, though he asked about it. Plaintiff was told that Bradley was assigned to the case and that a resource team would investigate. McCullough told them that he did not know who was complaining but he had complaints and asked what to do about them. He was told his complaints would be considered during the investigation. McCullough claims that he was not asked to write a written response.

Two UAMS employee members of the Resource Panel were appointed to conduct an investigation of the sexual harassment allegations.  McCullough met with Audrey Bradley, Employee Relations Manager with the Office of Human Resources, and Long on July 12, 2005 to discuss the allegations and investigation procedures. Defendants claim that McCullough  was asked during that meeting to submit a written response to the allegations against him. McCullough sent an e-mail on July 25 to Long, with copies to his supervisor, Kate Stewart, Raczynski, and Andrea Roy, Human Resources Officer at COPH. He attached an eight page sexual harassment complaint against Elaine Wooten. The document was dated July 11, 2005 and contained numerous allegations concerning Ms.

2

Wooten and listed various witnesses.  Long responded the following day that McCullough should telephone him directly regarding his complaint and not by e-mail.

McCullough met with investigators Ken Easter and Judy Sims on July 28 to discuss the allegations against him. He was advised by the investigators to submit a written response to the charges.   McCullough claims that he  had already sent a long list of the problems he had and was told he would have a chance later to reply in writing to the allegations against him.  McCullough was again reminded to submit a hand-delivered, written response to the allegations on August 2 and 3, by Audrey Bradley.

On August 3, 2005 McCullough submitted paper copies as requested. The documents submitted consisted of two documents styled  "Combination Complaint/Response" against Elaine Wooten (one being the document attached in the earlier e-mail) and one document entitled "Collective Sexual Harassment Complaint and Complaint Response" against Jodiane Tritt.

During the next several weeks, the investigators interviewed eight persons, in addition to the two complainants and McCullough. The witness interviews were based on lists that McCullough provided in his response/counter-complaints.   McCullough claims that some of the witnesses were interviewed, but not all.  Defendants claim that Sims and Easter based their decisions on who would be interviewed based on the persons who would be most knowledgeable about the parties and their interactions and who could best address the allegations submitted in the documents.   Defendants claim that the investigators considered the allegations raised by the two complainants as well as the allegations raised in McCullough's responses. McCullough asserts that they found  against him even though there was no third party confirmation of misbehavior by him directed at Wooten or Tritt, and there was substantial corroboration of the consensual behavior they directed toward him, and some

contradiction of their claims.

The investigation committee's findings were submitted to Separate Defendant Long on September 2, 2005.  At Long's request, an addendum to this report was submitted on September 15, 2005, with more detailed information taken from the investigators' notes of their interviews.  Long submitted his report of the investigation findings to Raczynski on September 21, 2005. In his report, Long stated there was "a preponderance of evidence to indicate that Mr. McCullough has in fact exhibited inappropriate behavior of a sexual nature toward his coworkers. Furthermore this occurred on more than one occasion, making it serious to the point of warranting disciplinary actions." Defendants claim that in making his determination, Long examined the credibility of the witnesses who were interviewed and the totality of the evidence that was presented to him. McCullough denies this contention.

Long recommended McCullough be issued a written warning, that McCullough be referred to the Employee Assistance Program for counseling and that he attend a sexual harassment workshop. The document noted that final disposition of the matter was to be determined by Raczynski.

After reviewing the documents submitted by Long, Raczynski asked to review the complaint and counter-complaints before making a final decision.  Raczynski then met with Long to discuss Long's findings and recommendations. Defendants claim that Raczynski did not consult or discuss the matter with any other person before making his decision to terminate McCullough. In a letter to McCullough, dated October 3, 2005, Raczynski set forth the findings of the sexual harassment investigators and Long and stated McCullough's termination would be effective the following day.

On January 10 and January 19, 2005, McCullough was present at meetings in the Bone

4

Marrow Transplant Unit at UAMS where his wife Mary worked as a nurse. McCullough claims he attended the meetings to support his wife in matters pertaining to her FMLA leave.  The meeting on January 10 was held in nursing supervisor Susan Heath's office. Audrey Bradley also attended that meeting. Bradley's journal entries, made after the meeting, indicate that McCullough was hostile and threatening.   McCullough denies that he was hostile or threatening.  Heath contacted the UAMS Police Department the following day to report McCullough's behavior and threats.

McCullough testified that he thought he was attending a going away party for his wife when he attended a meeting on January 19, 2005.  Present at the second meeting was nursing supervisor Carol Murray and Susan Heath. McCullough testified that Conners and Heath were upset with his wife for taking FMLA leave.  Following this meeting, Heath reported to Bradley that McCullough became hostile and threatened Conners when he was asked to leave. Conners spoke with a UAMS security officer the next day to report that McCullough refused to leave the meeting when asked and repeatedly threatened to sue UAMS.  Plaintiff denies being hostile or making threats.

Following the second meeting, both incidents were reported to McCullough's supervisor, Kate Stewart, by the nursing supervisors who attended the meeting.  Stewart contacted Bradley, Conners and Heath to have them relate the details of what happened. Defendants contend that Stewart was told that McCullough had been "verbally abusive" and "threatening."  McCullough denies being verbally abusive or threatening, and claims he was given a verbal warning without having his side of the story heard first.

Defendants contend that Stewart and COPH Human Resources Manager, Andrea Roy, met with McCullough regarding the incidents. McCullough was given the opportunity to respond to the reported incidents and did so in a seven page document.  Plaintiff admits the meeting occurred, but

claims that he was given a verbal warning before being given the chance to respond.   The document was placed in Stewart's personal files. No other action was taken nor was Raczynski notified of the matter.   Defendants contend that  Raczynski had no knowledge of the incidents relating to Mary McCullough's FMLA leave until McCullough testified about it in his deposition.   McCullough received an out-of-cycle pay increase which became effective after the February 1 meeting with Stewart.

Following his termination on October 4, 2005, McCullough filed a grievance with the Office of Employee Relations. McCullough's termination was determined to have been proper and in accordance with administrative guidelines.  McCullough contends that his termination was discriminatory and retaliatory. McCullough filed a complaint on February 13, 2006 with the EEOC alleging sex discrimination and retaliation and claims he was harassed by a single co-worker. McCullough states that the claim should have referred to two coworkers, not one.

McCullough filed a complaint in this Court on March 29, 2006, against UAMS, Raczynski and Long under Section 1983, ACRA and the FMLA[1].  Defendants filed a Motion to Dismiss the claims against UAMS, which was granted by order of June 2, 2006.   The EEOC issued its findings to McCullough on June 2, 2006 in which it found McCullough had not been discharged because of his sex or in retaliation for complaining of sexual harassment, but because he had "sexually harassed [his] co-workers."   The EEOC issued a Right to Sue letter on June 8, 2006.

McCullough filed an Amended Complaint on June 23, 2006, to add retaliation and gender

---

[1]Plaintiff has agreed to not pursue his claims that he was retaliated against for complaining of violations of the FMLA which were brought pursuant to the FMLA, 42 U.S.C. §1983 and the ACRA.  Accordingly, these claims are hereby dismissed.

discrimination claims under Title VII.   Defendants contend that summary judgment is proper on all of Plaintiff's clams.

**Plaintiff affirmatively claims the following:**   Wooten and Tritt filed sexual harassment complaints against him which were false, he informed Defendants these allegations were false and complained both verbally and in writing of gender discrimination in the form of sexual harassment against both Wooten and Tritt.   McCullough contends that his complaints against Wooten and Tritt were intended to bring about a change in the working environment for himself and the other employees, and hopefully prevent further illegal behavior.   McCullough alleges that he had not complained before because Wooten's direct supervisor was the Dean with whom she claimed to have a very good relationship, and Tritt's father was the Speaker of the House, whom she spoke of all the time.

McCullough submits that Shirley Tyson, a research associate for the Arkansas Center of Health Improvement found him to be down to earth and low-key; did not notice him joking a lot and  noted that he tended to leave the social gatherings after work first before the others. Tyson never saw McCullough engage in inappropriate sexual speech or jokes, stating that if he made any type of sexual joke, it was mild and would be the kind of jokes that would not be unusual from anybody else.  Dionn Ware, a project specialist for the Arkansas Center for Health Improvement had no problems working with McCullough one on one and never saw him act inappropriately.  Judy Bennett knew Al McCullough from working with him at the College of Public Health through the time he was terminated. They worked in the same area for the last ten months of his employment.  Bennett found McCullough to be professional and courteous. According to her, everyone got chocolates from his office, including Wooten.

7

Plaintiff contends that Judy Bennett observed him and Wooten interact fairly often and that they were friendly up to the time Wooten moved her office.  Bennett never observed Wooten and McCullough have a bad interaction.  Bennett observed Wooten make jokes making fun of Chelonis' laugh or McCullough's shoes.  On one occasion, Bennett heard Wooten say that she did not want to walk by the office because she did not want Al or John to watch her butt as she walked by.  This surprised Bennett because she had never noticed either man staring at  Wooten as she walked by.  Plaintiff states that it was well-known that he had chocolates in his office and that everyone would get them.  Bennett observed Wooten act somewhat possessive of McCullough and his office mate Chelonis. When Bennett would meet with Plaintiff, Wooten made a point of interrupting, coming in, talking,  getting candy, and giving Bennett the feeling that she was not wanted.

Plaintiff argues that he and  Wooten did not really work on the same projects and given this  fact Bennett thought it was odd that Wooten seemed to make a point of going past McCullough's office.  Plaintiff contends that from the time Wooten moved her office until the time the sexual harassment complaints were lodged against him,  Wooten continued to come by his office.

Tritt's conduct toward McCullough  in the office was  observed by Shirley Tyson. Shirley Tyson observed Tritt tell sexual information about her life, make "inappropriate comments about wanting to sleep with someone at work;"  indicate she would like to sleep with Dr. Joe Thompson and tell dirty jokes.  Tyson stated that most of the people in the office told dirty jokes but cannot recall if McCullough did so.  Tyson said that Tritt was a pleaser and attention seeker and she in particular sought out the attention of Joe Thompson and Al

McCullough.  Tyson noted that Tritt tended to go in Al McCullough and Dilan Pinidiya's office more often than she did a female's office.   Tritt also often talked about her sex life.  Tyson said that Tritt would say these things where men could hear her.  Tyson told the investigators that she was "surprised that Jodianne would take offense to anything because she said just about anything to anybody."   Tyson noted that Tritt wore short skirts and observed that Tritt often went into McCullough's office and joked with him.   At a Christmas party, Tritt allegedly purchased a pair of red sparkling thongs and these were given as part of a gift to Kevin Rhine as a joke.  Tyson indicated that she felt that Tritt "came on" to  McCullough inappropriately and crossed some boundaries.

Tritt's conduct toward McCullough in the office was also observed by Dionne Ware. Ware stated that Tritt was one of the people that would make jokes in the office; she would interact with McCullough in a joking, friendly, verbal sparring fashion on a normal basis; she discussed her sex life in the office and indicated that she would be interested in sleeping with a man from the office, these comments were made around other men in the office.  Ware also heard Tritt make comments she considered to be flirtatious to McCullough, examples of this would be saying on occasions, "Al is my man, my lover," and "Oh, I love Al."   Ware heard Tritt talk about parts of men that she found attractive.

Plaintiff claims that Long did not believe McCullough's termination was justified. Plaintiff also claims that there was no corroboration of the claims made against him and there was direct and circumstantial evidence of retaliatory intent in the decision to terminate him. Specifically, Plaintiff claims that in the investigation, when Long spoke with Raczynski, Raczynski indicated he felt McCullough's allegations of sexual harassment were offensive and

9

indicated that McCullough's complaints and their content was a basis for making the decision to terminate.  He also claims that he was told that if he admitted to the allegations, he would not be fired.   Plaintiff complains that neither Wooten nor Tritt was disciplined or fired despite the fact that they were all employed by the College of Public Health, worked under Raczynski, were the subjects of the same investigation, and were subject to the same policies on discrimination, discipline, and harassment.   Plaintiff argues that summary judgment should be denied.

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not

10

contain such an issue and to identify that part of the record which
bears out his assertion.  Once this is done, his burden is discharged,
and, if the record in fact bears out the claim that no genuine dispute
exists on any material fact, it is then the respondent's burden to set
forth affirmative evidence, specific facts, showing that there is a
genuine dispute on that issue.  If the respondent fails to carry that
burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

<u>Discussion</u>

The Court entered an order on June 2, 2006 dismissing Plaintiff's claims against UAMS

without objection.  Since the entry of that Order, the Plaintiff has filed an amended complaint

adding claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e.  Plaintiff

acknowledges that UAMS, Long and Raczynski are not proper Defendants under Title VII,

accordingly, Defendant's motion for summary judgment as to UAMS, Long and Raczynski on

Plaintiff's Title VII claims is granted.  Plaintiff asks that the Court allow him to amend his

complaint to identify the proper party.  The Court finds, for the reasons set forth below, that

Plaintiff's request should be denied as the Plaintiff's Title VII claims, even if brought against the

proper parties, cannot survive summary judgment.

Plaintiff brings Title VII and Arkansas Civil Rights claims alleging gender discrimination

and retaliation.   A plaintiff may prove intentional discrimination using either direct or indirect

(circumstantial) evidence. See *Price Waterhouse v. Hopkins,*  490 U.S. 228, 270-79, 109 S.Ct.

1775, 104 L.Ed.2d 268 (1989).  Plaintiff's discrimination claims asserted pursuant to § 1983,

11

Title VII , and the ACRA "are analyzed under the burden-shifting framework set forth in McDonnell Douglas." *Clegg v. Arkansas Dept. of Correction,* 496 F.3d 922, 926 (8th Cir. 2007)

Plaintiff claims to have direct evidence on his claims of retaliation and indirect evidence of his gender claims. Direct evidence is evidence that establishes "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir.2003) (quotations omitted) (alteration in original). " '[D]irect evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.' " *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir.1998) (quoting *Price Waterhouse*, 490 U.S. at 277). The Court finds that Plaintiff has failed to show discrimination by direct evidence. Plaintiff has not alleged any direct evidence of discrimination, that may be "viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. S.E. Mo. Community Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998). Plaintiff alleges that Raczynski's termination letter states that McCullough was being terminated because of the complaints he made against Wooten and Tritt. In fact, the termination letter sets forth the legitimate business reasons for McCullough's termination, namely, a finding that "a preponderance of the evidence [exists which ] indicate[s] that [he] exhibited inappropriate behavior of a sexual nature toward [his] co-workers." Further, Raczynski notes the investigators findings that this inappropriate sexual behavior occurred on multiple occasions. The letter includes a finding that McCullough was untruthful during the investigation and that his two

12

complaints of sexual harassment appear to be vindictive in nature.

Plaintiff also complains that he was told that if he admitted to the allegations of sexual harassment he would receive a "slap on the wrist."   However, Plaintiff's only evidence to support this contention is Plaintiff's affidavit.  "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.  *Bass v. SBC Communications, Inc*.  418 F.3d 870, 872 -73 (8th Cir. 2005).  Finally, Plaintiff argues that certain speaking objections made by Defendant's counsel during the deposition of Long were improper and rose to the level of spoliation.  The Court disagrees.  The Court has reviewed the depositions of Long submitted by the parties and  finds no evidence that testimonial evidence was destroyed or that Plaintiff was prejudiced by the objections made by counsel.

Plaintiff may also rely on indirect evidence of discrimination under the burden-shifting framework established in  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805-06 (1973).  As relevant in this action alleging discriminatory discharge, under the McDonnell Douglas framework, a plaintiff first has to establish a *prima facie* case by showing that he: (1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) under circumstances permitting "an inference of discrimination." *Zhuang v. Datacard Corp*., 414 F.3d 849, 854 (8th Cir.2005). If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for the action. *E.E.O.C. v.  Kohler*, 335 F.3d 766, 772-73 (8th Cir. 2003).  If the defendant does so, the plaintiff must offer evidence showing that the defendant's legitimate reason is merely a pretext for discrimination. *Id.*

13

The Court finds that Plaintiff has failed to establish a prima facie case of discrimination because he has failed to demonstrate that his termination occurred under circumstances which permit an inference of discrimination.  Additionally, the Defendants have articulated legitimate business reasons for their decision and Plaintiff has failed to prove pretext.

Defendants articulated legitimate, nondiscriminatory reasons for its employment decision. Courts are not permitted to second-guess an employer's personnel decision or to correct an unwise decision if the employer gives an honest, nondiscriminatory explanation for its decision. *Gill v. Reorganized Sch. Dist R-6*, 32 F.3d 376, 379 (8th Cir. 1994).  Defendants state that Plaintiff was terminated because he exhibited inappropriate behavior toward his co-workers; this behavior occurred on multiple occasions; he was untruthful during the investigation; refused to take responsibility for his action; and that his claims of sexual harassment appeared to be vindictive in nature.  Even if the decision makers were wrong in their conclusions, there is still no basis for recovery for discrimination.  *Scroggins v. Univ. of Minn*, 221 F. 3d 1042, 1045 (8th Cir.  2000) (the relevant inquiry is whether the defendant believed the plaintiff was guilty of the conduct justifying the discharge, not whether he was actually guilty).

Plaintiff has also failed to meet his burden of proof that similarly situated employees outside of the class were treated more favorably."To be able to introduce evidence comparing the plaintiff to other similarly situated employees in a discrimination case, the other employees must have been 'similarly situated to the plaintiff in all relevant aspects.'" *Kight v. Auto Zone, Inc.*, 494 F.3d 727, 734 (8th Cir. 2007) *quoting Forrest v. Kraft Foods, Inc*., 285 F.3d 688, 691-92 (8th Cir. 2002).   To show that he was similarly situated Plaintiff must establish that he was treated differently from those employees whose violations were of comparable seriousness.  *Williams v.*

14

*St. Lukes- Shawnee Mission Health Sys.*, 276 F. 3d 1057 (8th Cir. 2002).  Plaintiff argues that he was treated differently from Tritt and Wooten.  However, Wooten and Tritt had only one claim of harassment filed against them, the complaint of Plaintiff which was made in response to their own allegations made against him.  Additionally, the two complaints of harassment made against Plaintiff were sustained following an investigation where the one complaint against Tritt and Wooten were found to be baseless.  Finally, the allegations contained within the complaints are substantially dissimilar.  Plaintiff was accused of making overt sexual advances towards Tritt and Wooten where Plaintiff's complaints against them were of alleged inappropriate remarks.

With regard to Plaintiff's allegations of retaliation, Plaintiff must demonstrate that  he engaged in protected activity, that an adverse employment action occurred, and that there was a causal connection between the two.  *Hoffman v. Rubin*, 193 F. 3d 959 (8th Cir. 1999).   The Court does not find that Plaintiff's arguments regarding the interactions between Plaintiff, Tritt and Wooten; the alleged shifting explanations for the Defendants' conduct; the Defendants' alleged failure to follow policy and procedure; or,  the alleged inability of the decision makers to identify the evidence supporting their conclusions support a causal connection between the harassment complaints filed by Plaintiff and his termination.   Additionally, as set forth above, the Court finds that the Defendants articulated legitimate non-discriminatory reasons for its decision and Plaintiff has failed to demonstrate pretext.

Plaintiff also claims that the filing of sexual harassment claims against his co-workers is a matter of public concern.  Plaintiff complains that he was illegally retaliated against for exercising free speech rights regarding sexual harassment and gender discrimination.  In order to establish that Plaintiff was retaliated against for exercising his First Amendment rights, he must

show that he engaged in speech protected by the First Amendment and that this protected speech was a substantial or motivating factor in his termination.  *Cox v. Dardanelle Public School Dist*., 790 F. 2d 668 (8th Cir. 1986).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context" of the speech, and the speech must relate to some "matter of political, social or other concern to the community." *Connick v. Myers*, 461 U.S. 138,146-47 (1983).  If a public employee's speech is purely job-related, his speech will not be deemed a matter of public concern. *Buazard v. Meridith*, 172 F.3d 546, 548 (8th Cir.1999). "Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment." *Id*. It is not enough that the topic of an employee's speech is one in which the public might have an interest. *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir.1993). The Court must determine whether the purpose of the speech was to raise issues of public concern or to further the employee's private interests.  *See, Sparr v. Ward*  306 F.3d 589, 594 (8th Cir. 2002).

Plaintiff's complaints of sexual harassment were submitted as part of the investigation proceedings regarding the allegations of sexual harassment made against him. Plaintiff's complaints were addressed and copied to Hosea Long, Andrea Roy, Kate Stewart, James Raczynski and the Investigative Team.  Plaintiff states in his memo dated July 11, 2005 that Wooten's alleged behavior created a hostile, offensive work environment for him and his co-workers.  He also states several times that Wooten's behavior is "not good for the organization." In his memo dated July 18, 2005, Plaintiff alleges that Tritt received special treatment because her father was a former Speaker of the House in the Arkansas Legislature.   However, the majority of Plaintiff's complaints centered on alleged inappropriate behavior of Wooten and Tritt

16

which Plaintiff found to be offensive.  Based upon the content, form and context of the complaints made by Plaintiff, the Court finds that Plaintiff's focus was that of an employee concerned with internal practices relevant to the employees of the institution and not as a public citizen informing the public that the institution was not properly discharging its duties.  *Connick*, 461 U.S. 138, 147-48 (1983).  The Court finds that in the context of Plaintiff's complaints he was speaking as an employee and  not speaking as a private citizen on matters of public concern.

Additionally, Plaintiff offers no evidence that his report of alleged sexual harassment was a substantial or motivating factor in his termination. The termination letter lists several factors supporting Defendants' decision and Defendants testified that the decision was based on the totality of the evidence found in the investigation.

Wherefore, for the reasons set forth herein, Defendants' motion for summary judgment is granted.

IT IS SO ORDERED this 14th  day of January, 2008.


_____
James M. Moody
United States District Judge